**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ALI ASGAR H. ALIBHAI,<br> *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 3:25-cv-02038-K |
| UNIVERSITY OF TEXAS AT DALLAS;<br>RICHARD BENSON, *in his Individual and*<br>*Official Capacities*; NILS ROEMER, *in his*<br>*Individual and Official Capacities*; INGA<br>MUSSELMAN, *in her Individual and Official*<br>*Capacities*; OFFICER RAMOS,<br>UNIVERSITY OF TEXAS AT DALLAS<br>POLICE DEPARTMENT, *in his Individual*<br>*and Official Capacities*; LAW<br>ENFORCEMENT OFFICERS JOHN DOES<br>1-5, *whose identities are currently unknown , in*<br>*their Individual and Official Capacities*; and<br>COLLIN COUNTY, TEXAS,<br> *Defendants.* | § § § § § § § § § § § § § § § § § | |

---

### UTD DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

---

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Austin Kinghorn**
Deputy Attorney General for Civil Litigation

**Kimberly Gdula**
Chief, General Litigation Division

**Drew L. Harris**
Special Counsel for Employment Law

OFFICE OF THE ATTORNEY GENERAL
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

*Counsel for The University of Texas at Dallas;*
*Richard Benson; Nils Roemer; Inga Musselman;*
*and Officer Ramos*

**TABLE OF CONTENTS**

I.      INTRODUCTION............................................................................................1

II.     RELEVANT ALLEGED FACTS.................................................................3

        A.      Plaintiff alleges he was arrested at a campus protest. ..............................3

        B.      Plaintiff vaguely alleges he was treated differently after his arrest. ........4

III.    STANDARD OF REVIEW...........................................................................5

IV.     ARGUMENT ................................................................................................6

        A.      The claims against UTD (except for the two Title VII claims) are
                barred by sovereign immunity....................................................................6

        B.      Plaintiff fails to state a viable Title VII disparate treatment claim..........6

        C.      Plaintiff fails to state a viable Title VII retaliation claim. ......................8

        D.      Plaintiff's official capacity claims against the Individual Defendants
                are barred by Eleventh Amendment immunity.........................................10

        E.      Plaintiff's individual capacity claims against the Individual
                Defendants fail to state a claim, and as pled, would be barred by
                qualified immunity. ................................................................................. 11

        F.      Plaintiff's tort claims are barred by the election of remedies
                provision in the Texas Tort Claims Act...................................................13

V.      CONCLUSION...........................................................................................15

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Aguilar v. Tex. Dep't of Crim. Justice*,
160 F.3d 1052 (5th Cir. 1998) ................................................................................ 6

*Alexander v. Walker*,
435 S.W.3d 789 (Tex. 2014) .......................................................................... 14, 15

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .................................................................................... 5, 11

*Babb v. Dorman*,
33 F.3d 472 (5th Cir. 1994) .................................................................................. 5

*Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*,
871 F. Supp. 2d 581 (S.D. Tex. 2012) ................................................................ 5, 8

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ........................................................................................... 8, 9

*Chrissy F. v. Miss. Dept. of Pub. Welfare*,
925 F.2d 844 (5th Cir. 1991) .............................................................................. 10

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ........................................................................... 6, 10

*Ex parte Young*,
209 U.S. 123 (1908) ........................................................................................... 10

*Glenn v. City of Tyler*,
242 F.3d 307 (5th Cir. 2001) .............................................................................. 12

*Gonzalez v. Kay*,
577 F.3d 600 (5th Cir. 2009) ................................................................................ 5

*Hamilton v. Dallas Cnty.*,
79 F.4th 494 (5th Cir. 2023) ................................................................................. 7

*Kisela v. Hughes*,
584 U.S. 100 (2018) ........................................................................................... 12

*Lakoski v. James*,
66 F.3d 751 (5th Cir. 1995) ................................................................................ 10

*Lopez v. Kempthorne*,
684 F. Supp. 2d 827 (S.D.Tex. 2010) .................................................................... 8

*Malley v. Briggs*,
475 U.S. 335 (1986) ........................................................................................... 11

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
253 S.W.3d 653 (Tex. 2008) ............................................................................... 13

*Mitchell v. Snow*,
   326 Fed. Appx. 852 (5th Cir. 2009) ................................................................. 8

*Molina v. Alvarado*,
   463 S.W.3d 867 (Tex. 2015) ........................................................................14

*Morgan v. Swanson*,
   610 F.3d 877 (5th Cir. 2010) .......................................................................11

*Morin v. Caire*,
   77 F.3d 116 (5th Cir. 1996) ...........................................................................5

*Mota v. Univ. of Tex. Houston Health Science Center*,
   261 F.3d 512 (5th Cir. 2001) ......................................................................... 8

*NiGen Biotech, L.L.C. v. Paxton*,
   804 F.3d 389 (5th Cir. 2015) .......................................................................10

*Nunez v. Simms*,
   341 F.3d 385 (5th Cir. 2003) .......................................................................11

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) .......................................................................................10

*Provensal v. Gaspard*,
   524 Fed. Appx. 974 (5th Cir. 2013) ........................................................... 6, 8

*R2 Inv. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ..........................................................................5

*Sessions v. Rusk State Hosp.*,
   648 F.2d 1066 (5th Cir. 1981) ....................................................................... 6

*Springola v. Tex.*,
   135 S.W.3d 330 (Tex. App.—Houston [14th Dist.], 2004, no pet.) .........................13

*Tarver v. City of Edna*,
   410 F.3d 745 (5th Cir. 2005) .......................................................................12

*Univ. of Texas Southwestern Medical Ctr. v. Nassar*,
   570 U.S. 338 (2013) ...................................................................................... 9

*Westfall v. Luna*,
   903 F.3d 534 (5th Cir. 2018) .......................................................................12

*Whitley v. Hanna*,
   726 F.3d 631 (5th Cir. 2013) .......................................................................11

*Zarnow v. City of Wichita Falls*,
   500 F.3d 401 (5th Cir. 2007) .......................................................................11

Statutes

42 U.S.C. § 1983 .................................................................................... passim

42 U.S.C. § 1981 ...............................................................................................................1, 2, 6, 11

TEX. CIV. PRAC. & REM. CODE § 101.106........................................................................2, 13, 14, 15

<u>Rules</u>

12(b)(6) ................................................................................................................................. 5, 11

## I.    INTRODUCTION

The "**UTD Defendants**"—comprising of The University of Texas at Dallas ("**UTD**") and the four "**Individual Defendants**" employed by UTD (Richard Benson, Nils Roemer, Inga Musselman, and Officer Ramos)—move to dismiss Plaintiff's Original Complaint (ECF #1) on grounds of: 1) sovereign immunity, 2) qualified immunity, and 3) failure to state a viable claim.

Plaintiff Dr. Alibhai is a tenure-track professor currently employed at UTD. He was arrested along with other professors and students at a "Gaza Liberation Plaza" protest on the UTD campus. In his pleading, Plaintiff conjectures that there was some sort of massive conspiracy led by the UTD President, Dr. Richard Benson, to specifically single him out for discrimination or retaliation based on his race, religion, national origin, or speech. In addition to suing UTD and President Benson, Plaintiff also sues Dr. Nils Roemer, the Dean of the School of Arts and Humanities; Dr. Inga Musselman, the Provost and Vice President for Academic Affairs; and "Officer Ramos," an officer in the UTD campus police department. Beyond the UTD Defendants, Plaintiff also sues Collin County as well as "Law Enforcement Officers John Does 1-5" for the same claims.[1]

Plaintiff's slapdash pleading vaguely asserts each Count against all "Defendants" without specifying who did what. Thus, Plaintiff asserts Title VII employment claims in Count VI and Count VII not only against UTD (Plaintiff's employer), but also against the other defendants (who Plaintiff does not allege were his employer). On the flipside, Plaintiff asserts § 1983, § 1981, and state tort claims against UTD, which has sovereign immunity to such claims. Plaintiff asserts state

---

[1] "John Does 1-5" are unknown, unrepresented individuals who are not part of the "UTD Defendants." Because multiple law enforcement agencies participated in the protest response, it is unknown who employed these officers.

*UTD Defendants' Motion to Dismiss and Brief in Support*                                    1

law tort claims against both UTD and its governmental employees, which requires immediate dismissal under the election of remedies provision in the Texas Tort Claims Act.

Moreover, Plaintiff's woefully conclusory pleadings fail to meet the "heightened pleading requirement" to plead around qualified immunity, which the Individual Defendants assert here.

The following chart summarizes the arguments in this brief:

| Section | Counts | Plaintiff's Claims | Reason for dismissal |
|---|---|---|---|
| A. | Counts I, II, III, IV, V, and VIII | § 1983 constitutional violation claims; various tort claims; § 1981 race discrimination claims | UTD has sovereign immunity to all such claims |
| B. | Count VI | Title VII disparate treatment based on race, religion, and national origin | Defendants other than UTD are not Plaintiff's employer; failure to exhaust administrative remedies; Plaintiff fails to plead facts showing actionable disparate treatment |
| C. | Count VII | Title VII retaliation | Defendants other than UTD are not Plaintiff's employer; failure to exhaust administrative remedies; Plaintiff fails to plead facts showing protected activity, any actionable retaliation, and any nexus between them |
| D. | Counts I, II, III, IV, V, and VIII | Claims against official capacity defendants | Sovereign immunity applies; not seeking prospective injunctive relief |
| E. | Counts I, II, III, IV, and VIII | Claims against individual capacity defendants | Failure to plead facts overcoming qualified immunity |
| F. | Count V | Tort claims of false imprisonment, assault, and intentional infliction of emotional distress | Barred by election of remedies provision in TEX. CPRC § 101.106 |

Notably, Plaintiff fails to plead that he has exhausted Title VII administrative remedies by filing a charge of discrimination and receiving a right-to-sue letter (nor can he, as no right-to-sue letter has been issued to date). This is a separate reason to dismiss or stay this proceeding.

## II.    RELEVANT ALLEGED FACTS

**A.    Plaintiff alleges he was arrested at a campus protest.**

On May 1, 2024, some students of UTD led a "Gaza Liberation Plaza" protest on the campus of UTD. *See* ECF #1, ¶ 17. The students erected an "encampment" on campus, and police officers responded by "advancing in formation" on the encampment in "riot gear." *Id*. ¶¶ 17-18. The police officers then arrested various students and professors (including "white faculty members") for trespassing. *Id*. ¶ 25.  Plaintiff was one of the various professors arrested.

Plaintiff Dr. Alibhai is a South Asian Muslim tenure-track professor of Islamic Art History employed at UTD. *Id*. ¶ 15. While the police officers were advancing in formation, Plaintiff video recorded the officers and directly engaged with the officers, repeating the phrase, "They are just kids." *Id*. § 18. Multiple police officers then attempted to arrest Dr. Alibhai, who alleges they "attempted [apparently unsuccessfully] to throw him to the ground." *Id*. ¶ 19. Dr. Alibhai alleges that the officers kicked him, twisted his limbs, and ripped his shirt before he was placed in custody in a transport van. *Id*.

One of the multiple officers arresting Plaintiff was allegedly "Officer Ramos," who "applied force to Plaintiff's shoulder blade, tightened restraints beyond a safe threshold," and dragged Plaintiff in the view of others. *Id*. ¶ 20.

Plaintiff does not allege that the other Individual Defendants (Benson, Roemer, and Musselman) had anything to do with his arrest. Plaintiff only complains that after the fact, President Benson "publicly endorsed" the mass arrest by suggesting in a public Op-Ed that "faculty and students might have been armed or had criminal records." *Id*. ¶ 36.

After his arrest, Plaintiff was transported to Collin County Jail, where one officer removed

restraints "with minimal force," while another "officer cutting away plastic restraints inflicted a deep laceration on Plaintiff's wrist." *Id.* ¶ 23. Plaintiff was then charged with criminal trespass and went through criminal proceedings lasting around 11 months, before a Collin County grand jury returned a no-bill on his criminal charge. *Id.* ¶ 24.

**B.    Plaintiff vaguely alleges he was treated differently after his arrest.**

Plaintiff alleges that as a result of his criminal arrest, some unspecified "UTD administrators" imposed campus access restrictions on him, requiring him to provide "advance notice to the UTD Police Department" for presence on campus beyond classroom teaching. *Id.* ¶¶ 25, 88. Plaintiff alleges that these access restrictions "were not imposed on similarly situated white faculty members who had also been arrested." *Id.* Despite suing all the Individual Defendants, Plaintiff does not plead who had the illegal intent to discriminate against him by imposing such access restrictions. The campus access restrictions were imposed "throughout the pendency of the criminal investigation," and Plaintiff does not allege they are currently in place (they are not). *Id.* ¶ 25.

Apart from the campus access restriction, Plaintiff also makes other conclusory allegations of differential treatment without providing the heightened factual details required to overcome qualified immunity. Instead of pleading facts and concrete actions, Plaintiff asserts various perceived conclusions (including some that are simply not cognizable harms) that he was:

> (a) Required to submit advance notice for any presence on campus beyond classroom teaching;
>
> (b) Excluded from participating in academic events he had helped organize:
>
> (c) Publicly replaced in ceremonial roles by non-arrested white colleagues;
>
> (d) Subjected to ambiguous warnings about job security and future disciplinary action;

(e) Denied clarification or support from university leadership to reintegrate safely and fully into academic life.

*Id.* ¶ 88. Plaintiff asserts a laundry list of improper motivations for these outcomes, including race, religion, national origin, and retaliation for him questioning "the disparate application of discipline." *Id.* ¶¶ 90, 96.

### III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). Ultimately, the question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. "The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth." *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 590 (S.D. Tex. 2012), citing *Iqbal*, 129 S.Ct. at 1950. The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Brown*, 871 F. Supp. 2d at 590, quoting *R2 Inv. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

Additionally, when a plaintiff sues a public official under § 1983, the district court must insist on <u>heightened pleading</u> by the plaintiff. *Brown*, 871 F. Supp. 2d at 591 (citing *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996)). In such cases, the pleadings "must state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Id.*, *quoting Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

## IV.    ARGUMENT

**A.    The claims against UTD (except for the two Title VII claims) are barred by sovereign immunity.**

"In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Sovereign immunity extends to state entities such as UTD and to official capacity defendants, where, as here, they are effectively suits against a state. To overcome that immunity, Plaintiff must show that Texas waived its immunity or Congress expressly abrogated it. *Id.*

While Title VII abrogated sovereign immunity, it is beyond dispute that "[t]he Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983." *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Indeed, "Section 1983 does not waive the states' sovereign immunity," and "Texas has not consented to this suit." *Id.* Similarly with regards to Plaintiff's § 1981 claim, "[u]nlike Title VII, Section 1981 contains no congressional waiver to the state's eleventh amendment immunity." *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981).

Accordingly, because UTD appears to be included in the "Defendants" referenced in each of Plaintiff's Counts, UTD should be dismissed due to sovereign immunity from all claims except the two Title VII claims (Counts VI and VII), which are separately addressed below.

**B.    Plaintiff fails to state a viable Title VII disparate treatment claim.**

As an initial matter, Plaintiff's cavalier pleading in Count VI appears to assert Title VII disparate treatment claims against all "Defendants" (*see* ECF #1, ¶ 87). "Title VII does not impose liability on individuals unless they are 'employers.'" *Provensal v. Gaspard*, 524 Fed. Appx. 974, 977 (5th Cir. 2013) (per curiam) (finding the Title VII claims against individuals to be "frivolous").

Plaintiff only alleges that he was employed by UTD. ECF #1, ¶ 5. Accordingly, the remaining defendants apart from UTD should be readily dismissed from Count VI.

"To plead a disparate-treatment claim under Title VII, a plaintiff must allege facts plausibly showing "(1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023). Here, Plaintiff has not alleged facts showing either requirement.

While the "adverse employment action" need not be an ultimate employment action like termination, it must still be a material change in "terms, conditions, or privileges of employment." *Id*. Notably, "the Supreme Court has cautioned federal courts not to 'transform Title VII into a general civility code for the American workplace' … Title VII accordingly does not permit liability for de minimis workplace trifles." *Id*. at 504-05.

As discussed above, Plaintiff asserts vague conclusions as supposed "adverse employment actions," such as "subjected to ambiguous warnings" and "denied clarification or support." ECF. #1, ¶ 88. Because Plaintiff does not allege concrete facts showing an actual material change in the terms, condition, and privileges of employment, his Title VII disparate treatment claim should be dismissed.

Further, Plaintiff does not allege facts showing that any acts were taken because of some of his protected characteristics. Plaintiff asserts discrimination on the basis of race, religion, and national origin. ECF #1, ¶ 88. But the only facts suggesting a protected characteristic was involved was that "white colleagues who were arrested during the same incident, such as Professor Ben Wright, were not subject to comparable restrictions, exclusions, or reputational harm." *Id*. ¶ 89. While this might identify a similarly situated comparator based on a race claim, there are no factual

pleadings relative to a religion or national origin claim. *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 592 (S.D. Tex. 2012). Critically, for employees to be "similarly situated," those employees' circumstances must have been "nearly identical." *Brown*, 871 F. Supp. 2d at 592. Courts should be "cognizant of the fact that 'the Fifth Circuit defines similarly situated narrowly.'" *Id.* at 593, quoting *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856–57 (S.D.Tex. 2010). Accordingly, the Title VII religion and national origin discrimination claims should be dismissed on pleading grounds.

**C.    Plaintiff fails to state a viable Title VII retaliation claim.**

As explained above, the non-employer defendants should also be dismissed from the Title VII retaliation claim asserted in Count VII. *See Provensal*, 524 Fed. Appx. at 977.

To state a claim for retaliation, a plaintiff must establish that: (1) he engaged in protected activity, as described in Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." *Mota v. Univ. of Tex. Houston Health Science Center*, 261 F.3d 512, 519 (5th Cir. 2001). "For purposes of retaliation claims, an adverse employment action is one that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Mitchell v. Snow*, 326 Fed. Appx. 852, 855-56 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[N]ormally[,] petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N.*, 548 U.S. at 68. The Supreme Court was emphatic in enforcing this Title VII threshold, stating "we believe it is important to separate significant from trivial harms." *Id.*

Here, Plaintiff alleges that after his arrest, he was subject to campus access restrictions, and

that his protected activity was "objecting to the discriminatory treatment he experienced relative to his white colleagues." ECF #1, ¶ 96. Specifically, Plaintiff alleges he did three things: 1) "sought clarification from university administrators, 2) raised concerns about the unfair restrictions placed on his campus access, and 3) questioned the disparate application of discipline." *Id.* The first two items are not protected activity under Title VII, while the third might be protected activity if he challenged "disparate application of discipline" based on race, which is not clear from the pleadings.

Nor is it apparent from the pleadings that the alleged retaliatory acts are actionable "adverse employment actions," as opposed to "petty slights." *Burlington N.*, 548 U.S. at 68. Plaintiff alleges the following vague "retaliatory conduct":

> (a) Continuing to impose vague and stigmatizing restrictions on his access to university spaces;

> (b) Conditioning his professional participation on advance disclosure to the same police department responsible for his unlawful arrest;

> (c) Excluding him from important academic events and committee work critical to his tenure review:

> (d) Ignoring requests for clarification and creating an environment of intimidation and fear.

ECF #1, ¶ 97. As pled, these are more akin to petty slights than "adverse employment actions."

Further, because Title VII retaliation claims require "but-for" causation, and Plaintiff fails to allege facts showing any sort of causal nexus between his alleged protected activity and the asserted "retaliatory conduct," the Title VII retaliation claim should be dismissed. *Univ. of Texas Southwestern Medical Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

**D.    Plaintiff's official capacity claims against the Individual Defendants are barred by Eleventh Amendment immunity.**

Plaintiff sues Benson, Roemer, and Musselman in both their individual and official capacities, while only suing Officer Ramos in his individual capacity. ECF #1, ¶¶ 7-10. "The Eleventh Amendment bars claims for damages not only when the claim is directed against the state but also when the claimant seeks damages from the State's officers in their official capacities and the damages would be paid out of the state treasury." *Chrissy F. v. Miss. Dept. of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Moreover, suing the employer in the guise of § 1983 official capacity claims for employment discrimination is redundant of Title VII, and preempted by that "carefully balanced remedial scheme for redressing employment discrimination by employers." *See Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995).

While a plaintiff may assert an official capacity claim for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), the requirements for such a claim are not pled here. *See City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). Plaintiff does not plead an ongoing violation of federal law nor prospective relief that the Court can provide. Notably Plaintiff does not plead that the campus access restrictions are *ongoing*. While Plaintiff asks the Court to "[e]njoin Defendants from maintaining or enforcing any policies, customs, or practices that unlawfully [violate the law]," this amounts to an impermissible injunction not to violate the law in the future, not to cure an ongoing violation of law. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("complaint must allege that the defendant is violating federal law, not simply that the defendant has done so.").

Accordingly, the official capacity claims against Individual Defendants Benson, Roemer, and Musselman should be dismissed due to sovereign immunity.

**E.      Plaintiff's individual capacity claims against the Individual Defendants fail to state a claim, and as pled, would be barred by qualified immunity.**

While Plaintiff asserts § 1983 and § 1981 claims broadly against all "Defendants," his "collective" pleading approach is insufficient; a government official is only liable for his own misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009).

As a further hurdle, the Individual Defendants may raise qualified immunity in a 12(b)(6) motion, and when they do so, they are "entitled to dismissal before the commencement of discovery," unless the plaintiff sufficiently alleges a violation of established law. *Morgan v. Swanson*, 610 F.3d 877, 882 (5th Cir. 2010). "Heightened pleading in qualified immunity cases requires that plaintiffs rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

"If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Therefore, a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

While there are some specific pleadings as to Officer Ramos, the general and vague pleadings against Benson, Roemer, and Musselman wholly fail to demonstrate that they violated a clearly established right at the time of the challenged conduct. There are no factual pleadings showing that the individual actions of Benson, Roemer, and Musselman violated Plaintiff's rights.

For example, the main allegation against President Benson was that he "publicly endorsed" the mass arrest at the protests by suggesting in press statements that "faculty and students might have been armed or had criminal records." ECF #1, ¶ 36. This plainly does not violate any clearly established law.

Plaintiff pleads more specific details as to Officer Ramos, alleging he was one of the officers arresting plaintiff, and that he "applied force to Plaintiff's shoulder blade, tightened restraints beyond a safe threshold" and dragged Plaintiff in the view of others. *Id.* ¶ 20. But excessive force "is an area of law 'in which the result depends very much on the facts of each case' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts of the case." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Courts are "not willing to second guess the officer ... who must act on the spur of the moment if that officer's action can be classified as 'arguably reasonable.'" *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).

Plaintiff's physical injury claims, such as his "elevated heart rate levels," are *de minimis* and not sufficient to constitute a recoverable constitutional injury. *See Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018); *Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Further, Plaintiff's pleadings appear to be based on the logic that because a grand jury eventually returned a no-bill on Plaintiff's charge that his arrest was wrongful and thus creates

individual liability for Officer Ramos. But Texas courts have found in similar context that an individual "violate[s] the criminal trespass statute by remaining on University property after being asked to leave," without more. *Springola v. Tex.*, 135 S.W.3d 330, 336 (Tex. App.—Houston [14th Dist.], 2004, no pet.). Thus, a seizure under Texas's criminal trespass statute is reasonable under the Fourth Amendment wherever an officer believes, based on their perception, that an individual has been told to leave but has refused. Here, there are not sufficiently pled facts to show that Plaintiff's arrest was in violation of clearly established law.

Accordingly, the individual capacity claims against all the Individual Defendants should be dismissed due to qualified immunity.

## F.    Plaintiff's tort claims are barred by the election of remedies provision in the Texas Tort Claims Act.

Plaintiff asserts "false imprisonment" and "assault" state law tort claims against Officer Ramos and John Does 1-5, and asserts a claim of intentional infliction of emotional distress against "Defendants." ECF #1, ¶¶ 72-82. As a basic threshold, Plaintiff fails to allege facts showing the basic elements for these claims, especially since Officer Ramos was a duly licensed peace officer acting within the general scope of his duties as a UTD police officer. Further, these tort claims are barred by the election of remedies provision of the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE § 101.106.

Because plaintiffs have long tried to circumvent sovereign immunity by instead suing governmental employees, the Texas Legislature created an "election-of-remedies" provision in the Texas Tort Claims Act that bars lawsuits against individual employees if that claim was brought or could be brought against a State agency. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008). Thus, filing a tort claim "against a governmental unit constitutes an

irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a).

Section 101.106(e) provides:

> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.106(e). Here, Plaintiff asserts an intentional infliction of emotional distress tort claim against "Defendants," which includes UTD as the government employer of the Individual Defendants. According, the Individual Defendants must be immediately dismissed from this tort claim. *Molina v. Alvarado*, 463 S.W.3d 867, 871 (Tex. 2015).

With respect to the false imprisonment and assault claims against Officer Ramos, because he was sued in his official capacity as well as his individual capacity, the bar in § 101.106(e) similarly applies. *Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014) (a suit "against a government employee in his official capacity is a suit against his government employer" so "the plain language of the election-of-remedies provision, then, demonstrates that a suit against the government triggers subsection (a) and bars suit against an employee who has been sued in his individual rather than official capacity.").

Even if Plaintiff's confusing pleadings could be interpreted as only suing Officer Ramos in his individual capacity, because he was acting within the general scope of his duties as a UTD police officer, the Texas Tort Claims Act similarly requires his dismissal. The relevant portion in § 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against

the employee in the employee's official capacity only.

TEX. CIV. PRAC. & REM. CODE § 101.106(f). Accordingly, the individual capacity tort claims against

Officer Ramos must be dismissed. *Alexander*, 435 S.W.3d at 791.


## V.     CONCLUSION

For the reasons stated, the Court should dismiss Plaintiff's claims against the UTD

Defendants, and grant such other relief, at law or equity, to which they may be justly entitled.

Dated: October 3, 2025                    Respectfully submitted,

                                          **KEN PAXTON**
                                          Attorney General of Texas

                                          **BRENT WEBSTER**
                                          First Assistant Attorney General

                                          **RALPH MOLINA**
                                          Deputy First Assistant Attorney General

                                          **AUSTIN KINGHORN**
                                          Deputy Attorney General for Civil Litigation

                                          **KIMBERLY GDULA**
                                          Chief, General Litigation Division

                                          */s/ Drew L. Harris*
                                          **DREW L. HARRIS**
                                          Texas Bar No. 24057887
                                          Assistant Attorney General
                                          General Litigation Division
                                          P.O. Box 12548, Capitol Station
                                          Austin, Texas 78711-2548
                                          Telephone: 737-224-3791
                                          Facsimile: 512-320-0667
                                          drew.harris@oag.texas.gov
                                          ***ATTORNEYS FOR THE UTD DEFENDANTS***

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served, on this the ***3rd day of October 2025***, via CM/ECF filing upon the attorneys of record in this case.

/s/ *Drew L. Harris*
**DREW L. HARRIS**